The 9th Circuit Court of Appeals is now back in session. Please be seated. Okay, we're back on record and the next case on the calendar is 21-35826 Doe v. Wasden. These lawyers are present in person. Okay. By the way, welcome back. It's so nice to have lawyers in the courtroom again. Mr. Struger, it's deja vu all over again. Yes. Go right ahead, counsel. Thank you, Your Honor. John Doe and Randall Mangus have filed this Section 1983 action, collaterally attacking their underlying convictions to be removed from Idaho's sex offender registry. The state asks... Well, they say they're not collaterally attacking their convictions. So starting there is not necessarily... That conclusion isn't necessarily helpful. Well, we do think that Heckler v. Humphrey bars these claims as a collateral attack of the consequences of their convictions. There is one thing that triggers the necessity to register in Idaho, and it's a conviction, and they still have a valid conviction. So what if you go to the Equal Protection Argument Council? Because the argument there, of course, is that the conviction you're talking about triggers the duty to register, the statutory requirement to register, if you're convicted of a certain crime, right, which involves homosexual activity, but not if you had heterosexual activity with the same 16-year-old. That's not a registrable offense. What about that? It's not a registrable offense today. In 1994, any sexual contact with a person under the age of 18 was considered rape. But it's registrable now. Crime against nature is registrable now. Since that time, Idaho has adopted what's commonly referred to as a Romeo and Juliet exception for both male rape and female rape and has modified its statutes to incorporate a gender-neutral rape law, which didn't happen until 2016. Right, I appreciate that. And so I think the argument is that if a person in 1994 had been convicted of statutory rape, that is, consensual sex with a woman, a 16-year-old, that that person would not have to register. Do I misunderstand that? In 1994, that person did have to register. Today. Today, that person. If the conviction had happened in 94, if my question was garbled, I apologize, but I'm talking about two convictions in 1994 and then fast forward to today. I think one of those convictions requires registration and one does not. In 2012, the Court or Idaho codified a statute that permitted the person that had vaginal penile sex in 1994 to petition the Court for removal from the registry, and I believe it was a few years after that that it removed it from the list of registrable offenses. So my question is the answer to the question is today doesn't have to register? Yes. Today they do not have to register. With regard to a 1994 conviction. With regard to a 1994 conviction. Okay. So why isn't that a problem? It's not a problem because they're different crimes. I pointed out in my brief that Randall Mangus could have pled guilty to any number of crimes, but he chose the crime against nature as his guilty plea rather than proceed to jury trial. But I thought that included both anal and oral sex. The definition of crime against nature, did it not? It does, but prosecutorial discretion being what it is, he could have pled guilty to sexual battery of a minor. But he didn't. We're talking about what his conviction is. Right. In 1994, you could be convicted based on that for a crime against nature, correct? For consensual oral or anal sex? Yes. In 1994, you could. It wasn't until 1995 that Idaho first recognized a consent element. So in 1994, it didn't matter what the gender of the victim was. If you engaged in those acts, you committed a crime against nature. Correct. And we provided, I think, 40 years' worth of case law that demonstrates the crime against nature is equally pursued against both men and women. Not if it's consensual sex. Not if it's consensual sex. Right. And there's a question of consent here because at the time, his partners were 16 years of age and he was employed at the ranch in a position of authority over these two individuals. This brings us to another question, and I'd really appreciate your answer on this because I think the state said two different things in its briefing. When we do this analysis, are we looking at just the crime of conviction or is Idaho free to look through that crime of conviction? And I think you're now suggesting that maybe we should be reading in a failure of consent there, a lack of consent. No, I'm pointing out the lack of consent as it relates to Mangus. Mangus is a conviction-only statute or registration requirement because he was convicted in state. And so the conviction alone triggers his registration requirement. And the state didn't have to prove. Here's what I'm trying to get at. In his criminal case, the state did not have to prove lack of consent, right? Well, the state didn't have to prove anything because he pled guilty. Well, counsel, he wasn't convicted of an element of consent, whether it was a guilty plea or a jury trial. It doesn't matter for purposes of my question in case I confuse you. That wasn't an element of the offense. It's a trick question. I don't think it's an element. It wasn't an element of the offense until 1995. So why isn't that a problem? For the exact reasons as to why we are saying that the convictions, this challenge is barred by Heck v. Humphrey. If he has a problem with his underlying conviction and he believes that it violates Lawrence, he has procedures at the state level. Well, actually, he doesn't. I mean, he doesn't, right? He doesn't now, and he didn't at any time after Lawrence, did he? He absolutely did. And I can give you the case citations for equitable tolling of post-conviction proceedings. And it's actually mentioned in his direct appeal, his Rule 35 challenge to his sentence, and that's at ER 158. The court actually engages in an equitable tolling argument as to that appeal. And then Rankin v. State, 2021, Westlaw, 800380, and Creeble v. State, 148, Idaho 188, which says that if your conviction is found to be unconstitutional at a later date, that it's equitably tolled and you can bring a post-conviction or successive post-conviction. And can he bring a post-conviction proceeding in Idaho when he's not incarcerated either? You can bring a post-conviction proceeding in Idaho when you're not incarcerated. Is there any limitation at all? No time limit. But under the federal statute, he would only have a year after the Supreme Court ruled in Lawrence to seek relief. Otherwise, he's barred by the one-year AEDPA statute. That's correct. He would have had one year from Lawrence to file for those post-conviction proceedings. But as this court pointed out in Lyle, that doesn't get him over the heck bar. If you had proceedings at any point in time that were available to you and you did not utilize them, Heck v. Humphrey still bars your challenge to the underlying factual basis of your conviction. So at this point, he's out of time. Unless, although I don't think it exists anymore, unless he pursues a writ of quorum nobis, which I think we did away with when we adopted the federal rules of civil procedure. Do we know where he lived during that year after Lawrence? He was incarcerated. He was incarcerated until 2015. So he was incarcerated from 1994 until 2015. Who's he? You're talking about Menchus or Doe? No, Menchus, okay. Menchus. Now, he, I was actually talking about Doe. Did you just say, excuse me, forgive me, did you say 1994 to 2015? That's correct. I know that's contrary to what he testified to in Montana, but that's what our records show with the Department of Corrections. How did he serve seven years? He served 11 years. So he got, it was. . . That's not 11 years. That's 21 years. That's not 11 years. You're confusing us. Well, we can look back on this later, but just a point of order that doesn't seem quite right. It was a split determinant and indeterminate sentence, right? I believe so. I know it was 11 years, so if I'm doing my math in my head wrong, I apologize. It's not at all. I think it was 5 and 10 if I remember correctly. No, he got 15 and, the briefs say 15, and then he served seven. So we'll check on that. He was paroled multiple times and violated parole multiple times as well. I cut Judge Burzanoff. She had started a question. Well, I just wanted to go into the heck issue of some. And I'd like to move to Doe, if we can do that. Is there a reason not to do that? No, we can move to Doe. All right. Doe comes to Idaho, and he has a separate registration requirement that is not imposed by his judgment of conviction. It's being imposed by Idaho. And if he doesn't register, there are criminal consequences, right? Yes, if he fails to register after being notified of his duty to register. So I think the notion that Martin held that any injunction doesn't count for heck is not right. But any injunction, an injunction that depends on separate facts and future prosecutions, which this one does, right, because the registration requirement is separate from his conviction. And he is looking to enjoin any future prosecutions based on non-registration, on separate non-registrations that haven't happened yet. He is seeking to enjoin Idaho State Police from putting him on the registry, not from future prosecutions for failure to register. Well, but that's implied, right? I mean, if he doesn't go, if he doesn't, but he has to keep registering every year. And any year he doesn't register, he can be convicted for not registering. Right. And if you look at the facts of Martin, Martin proved that these were chronically homeless individuals who were bringing an Eighth Amendment claim that continuing to cite them for the fact and nature of being homeless and alone was what they were seeking to enjoin. Why that doesn't apply here is because he has a remedy available to him, which is to remove his conviction. It's a conviction-only trigger statute. Well, but he doesn't in each year that he was required to register. He only had it once back when, but he doesn't have now with respect to the registration requirement. I'm sorry. I didn't catch your question. He does not have it now or in the future with respect to the registration requirement. The ability to challenge his conviction? Yes. He hasn't even tried. I did not ask you whether he's tried or not. He couldn't collaterally attack it now. Could he, even in the context of resisting a future registration charge? He potentially could, and Mr. Struger used that exact example. I believe it was at the trial in Montana where he brought a similar case in the Fifth Circuit, and the Fifth Circuit said, well, at least try to challenge your conviction, and the prosecutors didn't contest it, and the conviction went away. But he already had to contest it in North Carolina. Yes. He would have to contest it in his home state. I mean, I do have an underlying question in both these cases, which is why the states are so adamant about continuing to require this. What is the reason for the state interest in it? Of why we — well, as Mr. Struger pointed out, we have removed the crime against nature as a crime in Idaho. But you haven't removed the registration requirement for past convictions. For past judgments. But the crime against nature statute, for a long time in Idaho, because of the outdated versions of our rape laws, as I walked through the history for this court in my briefing, encompassed sex with animals, sex with corpses, sex acts with children, sex acts against an individual's will. And up until 1994, it was the only way you could prosecute anal rape. Up until 1994, you could only vaginally rape a female, unless it was a male-on-male crime under male rape. Okay, but obviously that could all have been changed, and it wasn't. It has changed, and it has changed over time, and it has since been removed as a crime, and we've recodified the issues that Idaho sought to encompass within the crime against nature statute. But at the time, in 1994, that was a valid statute used to criminalize conduct that should be criminalized, not just consensual homosexual activity. And Idaho has the provision that allows the state police to sort of look through into the facts. Only as it relates to out-of-state convictions, and they don't look at the facts. If you look at Excerpt of Record 187, there is a quote that says the basis for his registration for Doe was because the crimes were nearly identical, word for word.  The findings are he was convicted of a crime against nature, the date of his conviction, and that it wasn't an adult. That is not looking at the underlying facts. What is your position? But then there's this whole proceeding where they insist that they are they did look at the facts. It's very peculiar. Well, what they're looking for is, was this person prosecuted for what was criminalized in Lawrence? Well, there are all these documents that are listed, and they say, yes, they tried to get them out of the record, and he said, we're not going to get them out of the record. They're supposed to be in the record. Why are they supposed to be in the record if you're not looking at them? It seems that both things are going on. It's very confusing. And in the district court, you argued that they did look at the facts, and now you're arguing they didn't look at the facts. And it seems from the sentence that you're talking about that they didn't look at the facts. But at the same time, the administrative agency insisted that they had to keep the documents and that they looked at them, and they were important. Well, the IDAPA rule, which remains unchallenged here, that's the administrative rule that gives them the authority to collect these records for purposes of determining whether it's a crime in Idaho, because not always do the crimes line up neatly as they did in this case. And that's the purpose of looking at those records. But what is Idaho's position, that you're looking for elements of the prior conviction, or what is it you're looking for? Looking for whether it's substantially equivalent to a crime in Idaho. Is that limited to elements, counsel? Because the registration requirement talks about being registered for certain convictions or attempted convictions of crimes. And so that's why this gets to be very dicey, it seems to me, when Idaho State Police start to look through to police reports to read in a lack of consent, if that's not an element of the crime. What's your best answer, please? My best answer for that is what they're looking for is whether this person was convicted of the crime as in Lawrence, which was deviant sexual intercourse, namely anal sex with a member of the same sex, because that would not be a crime in Idaho. But Doe was convicted of a crime against nature. He has a valid conviction. But didn't require consent, right? A lack of consent. It didn't require that showing. And so my concern on this has to do with procedural due process. The first notice he got that the Idaho police were going to do this inquiry was a notice that it was done. And it said it's final agency action, and if you want to appeal, you can. But, by the way, in the meantime, this won't be stayed. You have two days to register, and these consequences befall him. So what is the rationale therefore? How do I not find a failure of procedural due process for not giving him prior notice? Well, under Matthews v. Eldridge, the first element is that it's a private interest that's affected by official action. And you have Tandinsky, Connecticut, and Masto that all say once you're convicted of a sex crime, you no longer have that interest. Yes, but that's why the elements are so key. If that were just an element, if Idaho was only looking at elements, that would be one thing. He was not convicted of a crime that required a showing of failure to consent. So when you rely on those cases, you're talking about the due process protections that were built into the prior criminal proceeding. That did not happen in Doe's case. Right, and with Doe, we have the same problem that we have with Mingus, is there were no factual findings because he pled guilty. So the state never put... We still pled guilty to a crime, an offense with certain elements. It doesn't matter how we pled guilty or not or how the conviction happened. We're still looking at a crime with certain elements. Correct. Does it matter? Your position now is that they had the facts, but they didn't consider the facts, and they only looked at the elements, right, which presumably is illegal. Right, and when you look at the facts in the record, while I inartfully argued, if you look at excerpts of record, I believe it's 217, where I point back to there was... ISP never made a finding that it was nonconsensual. And this plays a little bit into the substantive due process argument because Lawrence's place in this case is for purposes of timing. Like, are we looking at... If we sit here today and say that individuals do not have a constitutionally protected right to engage in homosexual behavior, that we all widely recognize that, but did we understand that in 1994 or in the year that Doe was convicted? And the answer is no. That was not clearly established law. So the liberty interest we're looking at can't be 1994 and 2000. It has to be present day. And if that's the liberty interest that we're looking at, then the liberty interest is registration, not the sexual act. There is a long line of case law that says there's no liberty interest in a sex offender's ability to escape registration requirements. There isn't a long line of case law that says that for an offense that's no longer criminal. And there isn't a long line of case law, I can't find one, where a registration statute has done anything other than key off of and be triggered by a prior conviction, and for that we look at the elements. What was the person convicted of? In order to determine whether it really is a registrable offense, right? Right, but that's the purpose of having a conviction-only triggered statute, is that the conviction stand alone is the triggering element. If you look at the Neal case, where the issue was there is that we were looking at someone who was convicted of burglary, for example. But they may have — it was burglary with the intent to rape, but the rape charge was found not guilty. And they were saying, you're a sex offender. And that's where Neal said there are certain procedural protections that need to be in place. But the guy that was convicted of rape, he already received that procedure. And it's the same with Doe and Mangus. So in Neal, is the State's position that you could then nonetheless put him on the sex offender registration if the State administrative agency found that it was with intent to rape? No. It would be our position that if somebody was convicted only of burglary, that's not substantially equivalent to any registrable offense in Idaho. And the registration requirement would not be triggered. If you're looking only at the elements, then if you had either a procedural due process notice in hearing, he still would be required to register. It would come to the same conclusion. He would be required to register, and then he has administrative appeal processes available to him if he wants to challenge that finding. Which he had anyway. What was that? He did have those procedures available. We do have those procedures available. He did. This is a question of prior pre-deprivation process, right? It's a post-deprivation process. It isn't a pre-deprivation process. No. But the argument, the procedural due process argument is an argument about pre-deprivation process. Not entirely. I'm talking about pre-deprivation process in the context of Neal, where the process that was provided was the criminal process. The argument, I guess I will ask your opposing counsel, but their argument is, as I understand it, that there should have been a notice and a hearing before he was required to register. That's their position now. That was not an argument that was raised to the district court below. They said that no hearing and no process is what violated the procedural due process rights and ignored the fact that post-deprivation process was provided through the administrative appeal process. We've taken you over your time. We'll give you a few minutes when you come back. Thank you. Thank you. Good morning again, Your Honors. Matthew Struber for the Plaintiff Appellees. John Doe and Randall Mingus put guilty to oral or anal sex in the decade preceding Lawrence v. Texas. No one contests that such convictions were allowed and such prosecutions were allowed at that time. It's because in 1986 the Supreme Court upheld Georgia's sodomy statute from a facial challenge in Bowers. And no one contests that such prosecutions weren't just allowed but that they, in fact, happened. The only dispute is what to do with those convictions today because in 2003, Lawrence v. Texas overruled Bowers. Doe and Mingus pled guilty each to violating a law with one element, a strict liability law that prohibited having oral or anal sex. They pled guilty under laws that are indistinguishable from the Georgia law that was at issue in Bowers. And because of those convictions alone, Idaho requires them to register as sex offenders in 2022. So what's your answer to the heck issues? Well, neither plaintiffs are challenging their convictions. Well, it sounds like, I mean, this is the problem. There's kind of a wandering back and forth. You're saying the problem is that they were convicted for having engaged in consensual sex or in this crime that doesn't have anything to do with consent or age. And that's the problem. And now you're saying, but it isn't the problem. So, I mean, I would hope there's a way through this, but I don't know. I'd like to hear your best version of what it is. I think the existence of time explains the difference. So the convictions were constitutional at the time that they were convicted. And the convictions can be. But you can't be arguing. How does this not inevitably get back to challenging the validity of the underlying conviction? Well, I think because, like we were talking about in the earlier case, the challenge here is about. In the earlier case, there isn't a heck challenge. But here there is. Right? Here there is. And you've got other arguments to be sure. But I share. I mean, the problem is that our heck jurisprudence has somewhat gotten away from what heck was actually about, which was people bringing. And I thought the district judge in the Montana case did a nice job of recounting this, that there's originally what this was all about was making sure that people used a habeas when the habeas was available, rather in 1983. But this court, to some degree, but not entirely, has said in a nuanced way that sometimes, even if you're not incarcerated and habeas is not available, you still would have the problem. We're also being told that a habeas still would be available. And I have no idea whether that's true or not. And I think that sort of nuance is about cases that seek prospective relief, that seek to invalidate confinement or shorten its duration because those are issues in heck. Here we're not seeking to end any confinement or get compensation for any confinement or even get retrospective monetary relief for the years of registration. You are seeking relief from a consequence of the conviction. Right. And that is an element of the offense of failure to register. So you really do need a judicial declaration that the 1994 conviction is valid in order to prevail on your claim that you should not be required to register for violation of which you commit a separate new felony. The relief we're seeking, and the preliminary injunction here holds, is relief from prospective registration. So the showing up. So you'd remain convicted. Your clients would remain convicted. Remain convicted. And wouldn't have to register. That's correct. Because post Lawrence, it kind of, I mean, the basis for registration is that to notify the public and to protect children from dangerous sex offenders. And post Lawrence, the Supreme Court. So the differences are there's a different, there's a consequence. This consequence is not, for Mentius who was convicted in Idaho, was this part of his judgment or not? Excuse me? Was the registration requirement part of his criminal convictions? I don't believe so. I think the modern version of the registration statute was passed in 1998, I believe. So I don't believe so. So it's not the case, when you say not part of his conviction, was it part of his sentence imposed at the time? That's what I mean. That you must go, I think that's what Judge Berzon means, right? You have to do this many years in jail and you must go register? I don't believe so because I don't think that registration obligation was passed until 1998, which is four years after. I think it was passed in, I think it was passed in 93, so we'll check on that because that's exactly right. But for Joe, it certainly wasn't part of his conviction because it's something that Idaho published when he came here. That's right, like 47 other states. So number one, it's not part of the judgment or conviction. Number two, there is a future consequence, several of them. One of them is the exposure and essentially a public declaration of dangerousness. And secondly, the exposure to future prosecution if you don't do something, which is register or if you do do some things. So in that respect, it's independent of the conviction. Correct, and unlike Montana, Montana's registration statute does have restrictions on employment. I'm sorry, Idaho's statute does have restrictions on employment. It has restrictions on residency. It has more onerous reporting requirements than Montana does. So it's that relief from those notification requirements every time you sign up for a new Internet service or register a new car. It's relief from future prosecutions for failure to register for simply having engaged in oral or anal sex. And is it Mr. Doe's position that he didn't know about all these obligations until 2020? That's correct, Your Honor. He moved from his state of conviction, which like 47 other states doesn't require registration for historical sodomy convictions, moved to Idaho and registered there. And if I could, I think that even if everything that the state says about heck is right, I think it still wouldn't bar the procedural process or the equal protection claims. Can you explain? We got into a discussion about the procedural due process claim. Does your procedural due process claim depend on there being an underlying factual determination to be made or not? It does. The procedural due process claim was added after we sort of originally filed the complaint and learned the state's defense on substantive due process. So we filed the complaint on substantive due process. The state says, well, we can look under the fact of conviction and we can look at the facts here. And these facts, these plaintiffs were all alleged. Well, it said that, but actually the piece of paper does seem to just suggest that's not what they did. And now they're arguing it's not what they're doing. I think they're trying to have it both ways in some sense. But what, in fact, was done by the administrative agency that made the equivalency determination, it seems to have been simply an elements comparison. Well, I think we have three witnesses that testified on the – I'm not talking about the witnesses. I'm talking about the piece of paper that made the determination. Well, the state's own witnesses testified that they did do this underlying factual – Well, they said they looked at it. But the actual – well, suppose they didn't. Would you then have a procedural due process argument? Suppose they didn't look to the facts? Would we have a procedural – no. I think at that point it's just triggered by fact of conviction, and that's why we lost – that's why the district court found we weren't likely to succeed on Mr. Mingus's procedural due process claim. It was because the state didn't claim to sort of peer behind the fact of conviction and to the – or peer behind conviction itself to the facts. But were we to decide this on a procedural due process basis, then this would be a very – I mean, is this a class action? I don't even know that. No. This is just an as-applied challenge for these two plaintiffs. I thought – So it just seems to me I'm questioning why that – I think this is muddled about what they did or didn't do, what the Idaho State Police did or did not consider. But there's no prior pre-deprivation hearing or notice that was given, and we're looking at, aren't we, a preliminary injunction, and the question is whether the district court abused her discretion by relying on the representation made at that juncture? That's right, and – The representation – forgive me – and the representation was that they looked at the underlying, yes? Correct. But he didn't have notice of that. He didn't have – he had no notice. He had no pre-deprivation. But the injunction actually goes beyond the procedural due process issue, so we still have to address the substantive due process question because the injunction assumes it, right? The injunction is broader than go have another hearing before you make them register. Correct. I mean, the district court found we were likely to succeed on all three of our claims, but the substantive due process claim for both plaintiffs, the procedural due process claim for Doe because the State at the district court level claimed they did this peering back into the facts, and then the equal protection claim for Mr. Mingus. So, therefore, we don't avoid the heck issue, and we do have to reach the heck issue and the substantive due process issue. Well – For Doe. Well, Doe has – yeah. If – I don't think necessarily. I mean, I think Mr. Doe has the procedural due process. Mr. Mingus has the equal protection. Yes, but all he gets from the procedural due process is to go back and have the hearing. And the injunction is – we would not be able to affirm the injunction, which is broader than that, right? It isn't simply go have this hearing. That's correct. Which is why Judge Berzon is positing that even for Doe, you have to reach substantive due process and the heck problem. Sure. And I don't think I have too much more to add on. What's the best response to heck, other than that you concede that on the substantive due process claim you concede that your clients would remain convicted? Yes. And you're not challenging the underlying conviction, but as Judge Tallman said, you're challenging a consequence that flowed from that conviction, right? So what's your best argument? Our argument is that like in Martin or like in the Hufftile v. Michio Finesca case, we're looking at unconstitutional deprivations moving forward. The conviction can be constitutional. We're saying that the basis for sex offender registration for these two plaintiffs does not hold post Lawrence. Because the sex registration requirement is a separate requirement. Correct. It's not in the criminal statute. It was a collateral consequence of the conviction, such as, for example, some immigration consequence might be. But it is not the conviction itself in any sense. Correct. It's the disabilities it imposes moving forward, including prosecutions for failure to register, including medication. I just don't see how we get there, though, without declaring that the underlying conviction is invalid. Maybe I'm putting too much emphasis on the word invalid, but that's what heck used. I think, again, it's the existence of time. I mean, the conviction was valid at the time, as the Supreme Court had interpreted the Constitution at that time, and they served their time and they're not seeking any. But presumably what you would say is that the conviction, that what's invalid is the reliance on the notion that this conviction makes one eligible for a declaration of future dangerousness. Correct. Not the conviction itself, but what's currently invalid is the declaration of future dangerousness and the collateral consequences, like jobs and so on, based on an act, the sexual act, and not what they did to him directly because of the conviction. Correct. It's somewhere in the middle of the case. I agree. Is this theory dependent upon registration not being imposed as a part of his sentence? No. I mean, that's not something either parties have argued, but I don't believe registration was part of Mr. Menges' sentence, and it certainly wasn't part of Doe's because the state of conviction didn't require registration. Okay. The state of conviction required registration at the time but not later or never? Never. Oh, really? Like, even at the time Lawrence was decided, there were only four states that required registration for sodomy convictions. Louisiana has since repealed that requirement and its registration requirement. Mississippi and South Carolina still have theirs like Idaho does, although those have been winnowed through litigation similar to this case. Is there any chance of settling this case? Does Idaho really, really want to do this? That's a question better asked by opposing counsel. I'm asking whether there's any sense of trying to mediate this case. I mean, if you entered into an agreement with the state that they would not require him to register in the future, why wouldn't that solve the problem? That's all we want. The state hasn't been willing to do that to date. In Montana, we tried to resolve this pre-litigation, and Montana said he'd go get a court order. I can tell you that since the preliminary injunction has been issued, in this case Mr. Menges has worked in both Oregon and Utah, and both state police agencies told him he had to register in those states because he had a conviction. I elevated that through the state attorney general's offices. Can I ask you right there what you said? That was my other question. I was wondering, what about the other 49 states? Because this is a very ubiquitous state. What happened when you elevated it? They said as long as the injunction holds in Idaho, he doesn't have to register. Are those other states keyed on the conviction or on the duty to register in Idaho? Those states say that you must register in those states if you have a conviction that requires registration in that state of conviction. I guess both. I don't necessarily have a direct answer to that. I can ask Ms. Hayes when she gets back up because I would like to know what the state's position is on trying to resolve it in this fashion. Frankly, you both might be better off if you settled it than if you wait for us to answer these questions. Just a hint. In my last few minutes, if I could address Mr. Mingus's equal protection claim, which we talked a little bit about earlier. Again, the district court didn't abuse its discretion in finding that requiring an 18-year-old male who has same-sex sex with a 16-year-old male has to register while an 18-year-old male who has vaginal penile sex with a 16-year-old female doesn't. I don't think it matters what you just said, vaginal penile sex. I think the question is whether it's consensual. Do you disagree with that? Idaho has now said, the court has said, that there must be an element of, they don't use the word consent, against the will of the sexual partner. But they also conceded that in 1994 that wasn't the case. So these similarly situated people to Mr. Mingus would have been convicted in 1990. Yes, but to Judge, I don't mean to belabor this point, but to Judge Tomlin's point, I think we've all made this point, men can have oral sex with women, and the argument at one point from the state was that that could be also, in other words, if it had been heterosexual oral sex, that could have been prosecuted as a crime against nature. And it seems to me the question is. And it was, actually. And there are no indications ever of that happening unless it's been unconsensual sex. So it seems to me that's the valid comparison. And the difference then is gender. Two 18-year-old men in 1994 who had consensual sex with 16-year-olds. One partner's female, one partner's male. Right. One of those people has to register, one of those people doesn't. Correct. So the critical independent variable is the gender of the so-called victim. Partner. Partner. Correct. I don't understand that. Maybe it's a practical matter, but they could prosecute a man and a woman under the crime against nature statute. So why is it the gender? I think, if I'm picking up on Judge Kristen's point, is that that just didn't happen. That's not the way it happened. It's never happened. When we look at the statute to figure out what is he really being convicted of, it's this amorphous statement about the crime against, the infamous crime against nature, against mankind and animals or something. And so what does that really mean? The only place to look is how have they applied it. And it seems to me the only place I can see, I've looked as far as my clerks can tell you we've looked, only against where there's been homosexual activity and where women are concerned, certainly instances of oral sex, but only if it's not consensual. And after Bostock, that triggers heightened scrutiny. And while we argue rational basis in the district court, this court can affirm on any basis. We think it would be a real step back if this court applied rational basis, you know, after Lauda v. Otter and after Smith-Klein v. Abbott. We think heightened scrutiny is appropriate and the state doesn't justify it. Even if it involves non-consensual behavior? Well, the equal protection claim is only raised by Mr. Mangus. Did your client argue in the district court that heightened scrutiny should be applied? We didn't, Your Honor. Any reason for that, that I was missing or because I looked? Arrogance. We felt confident about our argument on rational basis. I've litigated these cases in other states that didn't have the Ninth Circuit's case law on equal protection, and we prevailed on rational basis. So I think that's on me. It's because the government has to come up with some rationale for declaring this person dangerous, which is what I understand this all to be about. And certainly Montana didn't, to my mind, and I'd like to hear what the Idaho people have to say about what their rational basis is. But I understand rational basis is a hard standard, but when you have an act that has been declared to be not only not dangerous but constitutionally protected, it's hard to figure out what their rational basis could be. Post-Lawrence. Post-Lawrence. We obviously believe it fails under either, but we think heightened scrutiny would be appropriate and it would be a step back to apply rational basis here. In closing, while it was once a crime in this country to have oral or anal sex, it no longer is. People who have had it are not a threat to the public, and they shouldn't be subject to lifetime registration for having had it. We ask the Court to affirm. Thank you, Counsel. Counsel, we'll put two minutes on the clock. Thank you. To answer the question about resolution, the registration statute does not have a discretionary component to it. There are avenues that Mingus and Doe can pursue, but they hold the keys to that castle. Well, except that presumably there is such a thing as prosecutorial discretion and Idaho could declare that if he doesn't register, they're not going to prosecute him. So there is a way that the case could be settled, it seems to me. I mean, if you were willing to, it's not as if your hands were tied with regard to the statutory provision because the ultimate question is, is he going to get in trouble if he doesn't do this? Right. But it requires some act by Mingus or Doe, including filing that post-conviction paperwork or petitioning. Is it too late for him to file? Is it too late for him to file that? We don't know. By statute, yes, but prosecutorial discretion being what it is, the prosecutor could decide not to contest. Well, therefore, in terms of whether there is any point in trying to discuss settlement of the case, your reason is not a reason because ultimately the question is, is he going to be prosecuted for not registering? Right. And why can't you, as the representative of the Attorney General of Idaho, enter into an agreement with him that the Idaho State Police will not require him to register based on this conviction? I don't know the answer to that question. What I can say is that the statute does not provide ISP discretion. It says if you were convicted of this crime, you shall register. I understand all that, but is there some reason why you can't talk with the director of the Idaho State Police or with the Attorney General and say, look, we can make this whole thing go away if we'll just sign a settlement agreement that says we won't require him to register? Or prosecute him for not registering. Or prosecute him for not registering. Who needs mediators when you've got Ninth Circuit judges? So we have wonderful mediators, and the question is, are you willing to talk to them? The Attorney General's office. So first to your question, I will represent to you, yes, I will speak with Colonel Wills and with the Attorney General about that option and about this court's request. Okay. We appreciate it. And I know, we all know, we put you through your paces today. But you are out of time, and you've answered the question about mediation, and I appreciate that. Could you take a few minutes or a few, not minutes, but could you wrap up? Yes, I just wanted to. I do have one question. Okay. Sorry. Okay. What is the State's rational basis for the, in Menjia's case, for a distinction between his situation and the situation of a person convicted of statutory rape at the same time? So the rational basis is based on the statute of conviction, which, as I stated in my opening, encompasses a lot more protected conduct, including the fact that you could not anally rape a female until 1994 in Idaho. And the crime against nature serves the function of protecting the public. But he didn't do any of those things. And so it's over-inclusive. Does your argument boil down to administrative convenience, because it's too hard to figure out which people are similarly situated to Mr. Menjia's? Right. It would require that rather than a registration statute be based on convictions, it's based on conduct. And if it's based on conduct, then we run. Well, not really, because this element, it goes back to this crime, was one strict liability element. Is there any indication in the record of how many people have been convicted of this offense? It looks like not very many. Not in the record. But I can tell you that there are eight individuals that only have the single registerable offense in Idaho, and four of those are with animals. Okay. So setting that aside, I appreciate the answer to that question. Could you get back to Judge Berzon's, which is administrative convenience, and is there anything else, any other interest that supports a rational basis review here? It would just be the registration in total, is that it protects the public. Studies have demonstrated that sex offenders. You can't. That, it seems to me, is for the reasons I said before, borrowed by Lawrence, that you need to protect the public from somebody whose crime was engaging in a constitutionally protected act. I'm not talking about any heightened scrutiny now, but what his crime was was a constitutionally protected act. So that rationale cannot apply to him. And it might not apply to him. The question of consent remains an open one. And then the last and final point that I would like to make is that we do think that these challenges are barred by Heck v. Humphrey. The registration statutes were enacted. But that one's not barred by Heck v. Humphrey, is it? Sorry? That one is not barred. The equal protection argument is not barred by Heck. Do you have an argument that that's barred by Heck? If their challenge in total is barred by Heck v. Humphrey, the equal protection argument doesn't exist either, in my opinion. Why? Because it still is a collateral attack on the underlying facts of the conviction. The registration statutes were enacted in 1993, and Mangus was convicted in 1994.  What would have been part of his judgment of conviction? The requirement to register? Yes, the requirement to register would have been part. You know if that was the case, was that part of his sentence, or is it collateral consequence because there's a parallel statute? In my experience, it's usually part of the judgment of conviction. Me too, but that's why I asked the question. I don't know about in 1994. We're asking in 1994. In 1994, my best guess is, yes, it was part of the judgment of conviction. The Registration Act was enacted in 1993. Right. I was saying that a little earlier, that I looked to the date of that statute, but I don't think this record tells us what his sentence consisted of. That's correct. The parties are currently engaging in discovery, and this record is based only on the preliminary filing. You don't have the judgment and commitment order from the state district court in Jim County? I do have it. I don't have it on the top of my head. Like I said, we put you through your paces today, and we appreciate your argument from all of you very, very much. If there are no further questions, we'll stand in recess. Thank you. Oh, no, we're not standing in recess. Sorry, one more. I just meant we'll take this case under advisement. Madam Clerk wasn't going to let me get away with that one.
judges: BERZON, TALLMAN, CHRISTEN